# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **GEOPHYSICAL SERVICE INCORPORATED** | § § § § § | **CASE NO.** _____ |
| **Plaintiff,** | § § | |
| **v.** | § § § | |
| **TGS-NOPEC GEOPHYSICAL COMPANY** | § § § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § | |

# COMPLAINT

Plaintiff, GEOPHYSICAL SERVICE INCORPORATED, by and through undersigned counsel, brings this Complaint against defendant, TGS-NOPEC GEOPHYSICAL COMPANY, for damages and injunctive relief, and in support thereof states as follows:

1. This is an action arising under the Copyright Act, 17 U.S.C. §§ 501 and 1202.

2. This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a), and 1367.

3. Defendant is subject to personal jurisdiction in Texas.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) because the events giving rise to the claims occurred in this district, Defendant engaged in infringement in this district, Defendant resides in this district, and Defendant is subject to personal jurisdiction in this district.

**THE PLAINTIFF**

5. GEOPHYSICAL SERVICE INCORPORATED. ("GSI") is a corporation formed pursuant to the laws of Canada and duly registered to do business in the Province of Alberta and elsewhere in Canada, with its head office at #400, 400-5 Avenue SW, Calgary, Alberta, T2P OL6.

6. GSI provides seismic data services to the oil and gas industry including non-exclusive data acquisition, licensing and storage of seismic, gravity and magnetic data. GSI's business is premised on expending, at great risk, capital, time, technology, know how, personnel and other resources to collect, purchase, store, process and re-process seismic data which can be licensed for a fee to oil and gas companies for use in exploring for oil, gas and other hydrocarbons.

7. The collection of seismic data involves the use of specialized know how to set appropriate technical parameters, the employment of specialized personnel and the use of specialized technical equipment. The collection of seismic data in the undersea or marine environment, in particular, further involves the use of a specialized marine vessel.

8. The equipment utilized generates sound waves typically through the use of tuned air source arrays (in the case of offshore operations), in combination with sensitive recording devices to record seismic data over an area of interest. Locating the lines to be recorded and the acquisition technical parameters involves the application of know-how, experience, judgment and utilizes proprietary techniques and equipment. Specialized storage devices are used to store the results on magnetic tapes and disks.

9. The seismic data, to be useful, must be processed through the application or know how, experience, judgment and through the use of proprietary techniques, computer programs and technology in order for the data to be put in a form which can be

utilized by a customer involved in exploring for oil and gas. One useful format for seismic data is a two-dimensional representation called a "seismic line." Prior to the widespread availability of high powered computers, seismic lines were produced on paper or other physical media (e.g. mylar), but with the advent of advanced personal computers, seismic data previously licensed in physical form is now licensed in a standardized computer format known as "SEG Y."

10. Seismic lines can be interpreted to reveal aspects of the earth's internal structure in the area covered by the seismic line. A seismic line is "picture" of the earth's rock layers in cross-section. The extent of the earth's layers and earth properties that can be discerned in a seismic line will depend on the acquisition parameters selected by GSI to initially gather the data, and also on processing decisions made by GSI concerning how to assemble and process the data into seismic lines.  Different acquisition parameters or different processing parameters can result in a seismic line with a different "look" to the displayed or visualized data. Those acquisition and processing decisions reflect the creative input of GSI personnel.

**DEFENDANT**

11. TGS-NOPEC GEOPHYSICAL COMPANY ("TGSN"), is a corporation incorporated pursuant to the laws of the State of Texas, with its head office located at Suite 2000, 2500 Citywest Boulevard, Houston, Texas 77042.

12. TGSN is also in the business of providing seismic data services to the oil and gas industry including non-exclusive data acquisition, licensing and storage of seismic, gravity and magnetic data.

13. TGSN was at all material times a business competitor of GSI.

## THE WORKS AT ISSUE

14. GSI is the owner of certain confidential and proprietary seismic, gravity and magnetic data, and interpretations or derivations that incorporate such data, and related materials, which were recorded and collected offshore of Newfoundland and Labrador, Canada.

15. During 1982, GSI collected, recorded and processed the NF-82 survey of approximately 7,309.30 kilometers of 2D seismic data, and has collected a total of approximately 150,188.31 kilometers of 2D and 2,632.61 SQ KM 3D seismic events, around the offshore Newfoundland and Labrador, Canada area in the Atlantic Ocean.

16. GSI processed, re-processed, transcribed and stored the seismic data as seismic lines. GSI entitled each seismic line "NF-82-XXXX," where "NF" means Newfoundland, "82" means the year 1982, and "XXXX" represents a series of unique four digit numerical identifiers assigned to each seismic line. The specific seismic lines at issue are listed in Exhibit A, and will be referred to herein collectively as the "GSI Works."

## COPYRIGHT PROTECTION OF SEISMIC LINES

17. Copyright protects original works of authorship, fixed in any tangible medium, from which the works may be perceived or reproduced. 17 U.S.C. § 102. For example, copyright exists in literary works, pictorial and graphic works, audiovisual works, and architectural works. 17 U.S.C. § 102(a). Copyright rights arise through the act of creating the copyrighted work and fixing the work in a tangible medium. 17 U.S.C. § 101. Registration of the work with the Copyright Office is not a condition of copyright protection. 17 U.S.C. § 408. Further, copyright protection does not depend on marking the work as "copyrighted;" such notice is optional. 17 U.S.C. § 401.

18.     Originality is the sine qua non of copyright. To be "original" a work must be independently created by the author and possess a minimal degree of creativity. *Feist Pub'lns. Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). However, the requisite level of creativity is extremely low; even a slight amount will suffice. *Id.*

19.     While facts are not copyrightable, the selection, coordination and arrangement of facts are. For instance, a map, while representing an underlying factual matter, nevertheless is subject to copyright protection – the originality comes in the selection, arrangement and presentation of the components. *United States v. Hamilton,* 583 F.2d 449 (9th Cir. 1978); *Mason v. Montgomery Data, Inc*., 967 F.2d 135 (5th Cir. 1992).

20.     Similarly, photographs are subject to copyright. "For more than a century photographs have been held to be copyrightable 'writings' under Article I, § 8 of the Constitution." *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992). This is so even when the photographs are largely "factual," rather than artistic, in nature. *See Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60-61 (1884) (recognizing wide copyright protection over photographs in holding that a photograph of Oscar Wilde was an original work of art because the author was required to make such creative decisions as placement of Oscar Wilde in front of the camera, selection of the angle, light and shade, etc.).

21.     For copyright purposes, seismic data compiled and processed into a seismic line can be analogized to a photograph. The photographer makes creative "acquisition" decisions in order to create a photograph, such as viewing angle, time of day, source of light, shutter speed, all of which will impact the final image. The photographer also makes creative decisions on how to "process" the photograph taken for

creation of the finished photograph product, such as hue/intensity filtering decisions, cropping decisions, or other image filtering decisions. These decisions reflect the creative input of the photographer, and have been recognized as endowing the minimal degree of originality required to support copyright protection in photographs. As Judge Learned Hand noted, "No photograph, however simple, can be unaffected by the personal influence of the photographer." *Jeweler's Circular Publg. Co. v. Keystone Publg Co.* 274 F. 932, 934 (S.D.N.Y. 1921).

22. GSI's originality in its seismic lines is represented in the acquisition parameters selected for data acquisition (such as the spacing of the acquisition lines, the length of the acquisition cable, the time spacing of the samples, the orientation of the survey, etc.), and in the selection and order of processing schemes to process the data (for instance, the choice of velocity models for migration, the choice of migration techniques, the selection of gain parameters, etc.). *See, Koons, supra*, 960 F.2d at 307 (original expression for copyright lies in the rendition of the subject matter, that is, the effect created by the combination of choices of perspective, angle, lighting, shading, focus, lens, etc.).

23. The art of creating seismic lines is analogous to photography, and entitled to the same copyright protection. GSI is not claiming copyright in the earth's substructure, but only in that earth's structure as depicted in its seismic lines. *See e.g. Reed Union Corp. v. Turtle Wax, Inc.* 77 F.3d 909, 919 (7th Cir. 1996) ("Ansel Adams published multiple view of El Capitan in Yosemite National Park in different seasons and lighting. He did not create the mountain, the park, the seasons or the lighting, but his expression of those conditions is an artistic achievement. Anyone can take and sell a

photograph of El Capitan, but Ansel Adams's photographs are protected by copyright."). TGSN is free to acquire their own dataset over the exact area as that covered by GSI's seismic lines, but TGSN, however, is not free to use GSI's Seismic Data absent a license from GSI.

24. GSI's seismic lines are fixed in a tangible medium from which they may be perceived. GSI's seismic lines are stored in physical form on paper, microfische, or mylar. In addition, GSI stores some of its seismic lines in digital form in a database, and the stored digital database is the "tangible medium" from which the data may be viewed, such as through a terminal computer workstation. *See, e.g. Religious Tech. Ctr. v. Netcom OnLine Comm'n Servs.*, Inc., 907 F. Supp. 1361 (N.D. Cal. 1995). Hence, GSI's seismic lines are protectable by copyright.

## GSI COPYRIGHT MANAGEMENT INFORMATION

25. The GSI Works contain GSI's copyright management information ("CMI").

26. Figure 1 shows an example of one type of CMI contained in the GSI Works. This CMI consists of the name "Geophysical Service Inc.," the year of acquisition, and the statement "ALL DATA AND INFORMATION SHOWN ON THIS SECTION ARE PROPRIETARY TO GEOPHYSICAL SERVICE INC. AND ITS AFFILIATES. DISCLOSURE TO THIRD PARTIES IS RESTRICTED."



*Figure 1-Example of GSI CMI with acquisition date and seismic line information*

27.     Figure 2 shows an example of another type of CMI contained in the GSI Works. This CMI consists of the name "Geophysical Service Inc.," the GSI logo, and the date and time of production.



*Figure 2-Example of GSI CMI with GSI logo and production date/time*

### CNLOPB COPIES THE GSI WORKS AT TGSN'S REQUEST

28.     Seismic service companies such as GSI and TGSN have at all material times been required by legislation in Canada to submit copies of collected seismic materials to various Canadian regulatory boards including the Canada-Newfoundland and Labrador Offshore Petroleum Board ("CNLOPB").

29. CNLOPB is a Canadian federal/provincial regulatory board created pursuant to the Canada Newfoundland Atlantic Accord Implementation Act, S.C. 1987, c. 3, as amended, and the Canada-Newfoundland and Labrador Atlantic Accord Implementation Act, R.S.N.L. Pursuant to the Newfoundland Offshore Area Petroleum Geophysical Operations Regulations, SOR 95-334, passed pursuant to the Canada Newfoundland Offshore Atlantic Accord Implementation Act S.C. 1987, c.3, GSI was required to, and did, submit to the CNLOPB a copy of the GSI Works.

30. CNLOPB was required to keep the GSI Works confidential. CNLOPB was never authorized to copy or distribute the GSI Works, or make derivative works from the GSI Works.

31. TGSN has never been authorized to copy or distribute the GSI Works, or make derivative Works from the GSI Works.

## **INFRINGEMENT AND CMI VIOLATIONS BY TGSN**

32. On or about August 8, 2013, GSI submitted a freedom of information request to the CNLOPB pursuant to the Access to Information and Protection of Privacy Act (Newfoundland and Labrador) ("ATIA").

33. On or about October 4, 2013, GSI received a response to its ATIA request from CNLOPB, a copy of which is annexed hereto as Exhibit A (the "ATIA Response").

34. The ATIA Response reflects that on March 29, 1999, TGSN solicited NLOPB to copy and distribute to TGSN copies of the GSI Works.

35. The ATIA Response reflects that on or about April 9, 1999, CNLOPB copied and distributed the GSI Works to TGSN by courier to TGSN in Houston, Texas.

36. Had TGSN properly licensed the GSI Works from GSI, instead of procuring illegal copies, GSI would have been entitled to a licensing fee of over $1.9M U.S. dollars.

37. The ATIA Response reflects that CNLOPB copied and distributed the GSI Works to TGSN, as requested and paid for by TGSN, for TGSN's use in creating new TGSN seismic surveys.

38. In or about 2002 to 2003, TGSN performed at least two seismic surveys entitled "OB-102" and "OB JOT' in the same location covered by the GSI Works.

39. In or about 2012 to 2013, TGSN performed at least one additional seismic survey entitled "NE Newfoundland Flemish Pass" in the same location covered by the GSI Works.

40. Upon information and belief, in connection with its 2002-2003 performance of seismic surveys entitled "OB-102" and "OB JOT' and its 2012-2013 performance of seismic survey entitled "NE Newfoundland Flemish Pass," TGSN copied and distributed the GSI Works, or made derivative works from the GSI Works.

41. Upon information and belief, in connection with its 2002-2003 performance of seismic surveys entitled "OB-102" and "OB JOT' and its 2012-2013 performance of seismic survey entitled "NE Newfoundland Flemish Pass," TGSN removed or altered GSI's CMI in the GSI Works.

42. As a direct result of TGSN's solicitation of copying and distribution of the GSI Works, TGSN's further copying, distribution and creation of derivative works from the GSI Works, and TGSN's removal of GSI's CMI from the GSI Works, TGSN performed the seismic surveys entitled "OB-102," "OB JOT,' and "NE Newfoundland

Flemish Pass," for which TGSN earned profits of over $10-15M U.S. dollars to date, and it will earn millions of dollars more in the future.

43. GSI discovered the infringement and CMI violations alleged herein in or about October 4, 2013 when it received the ATIA Response.

44. GSI has engaged the undersigned attorneys and has agreed to pay them a reasonable fee.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT

45. Plaintiff GSI incorporates the allegations of paragraphs 1 through 44 of this complaint as if fully set forth herein.

46. GSI owns valid copyrights in the GSI Works.

47. The GSI Works are foreign works created in Canada subject to the Berne Convention for the Protection of Literary and Artistic Works, and exempt from the registration requirements of 17 U.S.C. §411.

48. TGSN copied and distributed the GSI Works and made derivatives of the GSI Works without GSI's authorization in violation of 17 U.S.C. § 501.

49. GSI has been damaged.

50. The harm caused to GSI has been irreparable.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

51. Plaintiff GSI incorporates the allegations of paragraphs 1 through 44 of this complaint as if fully set forth herein.

52. GSI owns valid copyrights in the GSI Works.

53. The GSI Works are foreign works created in Canada subject to the Berne Convention for the Protection of Literary and Artistic Works, and exempt from the registration requirements of 17 U.S.C. §411.

54. CNLOPB copied and distributed the GSI Works to TGSN without GSI's authorization in violation of 17 U.S.C. § 501

55. TGSN solicited CNLOPB, and paid for copies to directly infringe GSI's exclusive rights in the GSI Works.

56. GSI has been damaged.

57. The harm caused to GSI has been irreparable.

## COUNT III
## REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION

58. Plaintiff GSI incorporates the allegations of paragraphs 1 through 44 of this complaint as if fully set forth herein.

59. The GSI Works contain GSI CMI.

60. TGSN knowingly and with the intent to enable, conceal or facilitate copyright infringement, altered or removed the GSI CMI from the GSI Works in violation of 17 U.S.C. § 1202(b).

61. TGSN committed these acts knowing or having reasonable grounds to know that they will enable, facilitate or conceal infringement of GSI's rights in the GSI Works protected under the Copyright Act.

62. GSI has been damaged.

63. The harm caused to GSI has been irreparable.

WHEREFORE, the Plaintiff GSI prays for judgment against TGSN that:

a. TGSN's officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. §§ 501 and 1202;

b. TGSN be required to pay GSI its actual damages and TGSN's profits attributable to the infringement, or statutory damages, as provided in 17 U.S.C. §§ 504 and 1203.

c. GSI be awarded its attorneys' fees and costs of suit under the applicable statutes sued upon;

d. GSI be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED: May 16, 2014

Respectfully submitted,

By: /sMichael Barnhart/
Michael K. Barnhart
Texas Bar I.D. 24040472
Fed. Bar I.D. 606340
michael@mkbarnhart.com
700 Louisiana St—49th Floor
Houston, TX  77002
(832) 418-1684
(832) 634-5834

Joel B. Rothman
Florida Bar No. 98220
joel.rothman@sriplaw.com
SCHNEIDER ROTHMAN INTELLECTUAL PROPERTY LAW GROUP PLLC
4651 North Federal Highway
Boca Raton, FL 33431
Telephone: (561) 404-4350
Fax: (561) 404-4353

13