**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GEOPHYSICAL SERVICES, INCORPORATED, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 14-1368 |
| | § | |
| TGS-NOPEC GEOPHYSICAL SERVICES, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Canadian laws regulating offshore petroleum exploration and extraction require geophysical surveyors performing seismic studies in waters offshore Newfoundland and Labrador to submit copies of the data the surveyors collect and compile to a government regulatory board.  The plaintiff, Geophysical Services Incorporated, performed seismic surveys in those offshore waters in 1982 and gave the regulatory board copies of its data.  Geophysical asserts a copyright interest in that data under Canadian law.  In 1999, the defendant, TGS-Nopec Geophysical Services ("TGS"), asked the regulatory board for a copy of the seismic data Geophysical had filed years earlier.  The board made copies and sent them to TGS's Houston address.  TGS then did its own seismic surveys at the same location where Geophysical had surveyed in 1982.  TGS licensed the data it collected through those surveys to oil and gas companies.  Geophysical has sued for copyright infringement, alleging that TGS contributorily infringed Geophysical's copyrighted seismic survey data by asking the Canadian regulatory board to copy the data and send it to TGS.  Geophysical also alleges that the TGS surveys made

1

at the locations disclosed in the Geophysical surveys obtained from the Canadian regulatory board were derivative works.  Geophysical alleges that TGS infringed its copyrights by providing licenses to oil and gas companies to use the data collected in the TGS surveys made using Geophysical's locations, and by distributing the survey results without attaching Geophysical's copyright-management information.

This memorandum and opinion addresses TGS's motion to dismiss.  TGS argues that Geophysical's complaint fails to state a claim and is barred by the act-of-state doctrine and by international comity.  (Docket Entry No. 10).  Geophysical responded, TGS replied, and Geophysical surreplied, (Docket Entry Nos. 13, 16, 20), and counsel presented oral argument.

Based on the pleadings; the motion, response, reply, and surreply; counsels' arguments; and the applicable law, the court grants the motion to dismiss.  The claims arising from TGS's request that the Canadian regulatory board copy and send the Geophysical survey data filed with the board years earlier are dismissed, with prejudice and without leave to amend.  The claims related to TGS's subsequent use of the data it received from the board are dismissed, but without prejudice.  No later than **April 24, 2015,** Geophysical may file an amended complaint that repleads these allegations in compliance with Rule 8(a) of the Federal Rules of Civil Procedure.

The reasons for these rulings are explained below.

## I.      Background

Geophysical is a Canadian company that collects, prepares, and licenses seismic data, including seismic lines.  (Docket Entry No. 1 at p. 2).[1]  Geophysical licenses its seismic lines to

---

[1] A seismic line is taken in offshore waters and is a two-dimensional depiction of the earth's structure below the ocean floor, revealing a cross-section picture of the earth's rock layers.  (Docket Entry No. 1 at p. 3).  The picture is intended to be an accurate depiction of the earth's structure.  Two seismic lines taken at the same location may vary, however, depending on the acquisition parameters selected by the surveyor,

oil and gas companies to use in exploring for oil, gas, and other hydrocarbons.

Various Canadian laws govern seismic surveying in Canada's offshore waters.  The federal government of Canada and the provincial government of Newfoundland and Labrador enacted the Canada-Newfoundland Atlantic Accord in 1985.  The Accord's objectives were "to provide for the development of oil and gas resources offshore Newfoundland for the benefit of Canada as a whole and Newfoundland in particular" and "to protect, preserve and advance the attainment of national self-sufficiency and security of supply."  (Docket Entry No. 10, Ex. A).  The federal and provincial governments enacted mirror legislation, the Canada-Newfoundland Offshore Petroleum Resources Accord Implementation Act, (the "Implementation Act"), to implement the Accord.  S.C. 1988, c. 28; R.S.N.L. 1990 c. C-2, (Docket Entry No. 10, Ex. B).

The Implementation Act authorized the adoption of the Newfoundland Offshore Area Petroleum Geophysical Operations Regulations (the "Operations Regulations").  SOR-95-334, (Docket Entry No. 10, Ex. C).  The Implementation Act also established the Canada-Newfoundland Offshore Petroleum Board (the "Petroleum Board").  The Petroleum Board is a government agency that oversees regulatory compliance with the Accord, the Implementation Act, and the Operations Regulations.  The Implementation Act and the Operations Regulations apply to all exploration and extraction activities in Newfoundland's offshore waters.  A surveyor intending to conduct seismic studies in those waters must first apply to the Petroleum Board for authorization and agree to follow the safety and reporting requirements established by the Board and by Canadian law.  Operations Regulations §§ 3, 4.

The Operations Regulations require geophysical surveyors to give the Petroleum Board a

---

proprietary processing technology, and decisions about how to process and assemble the data.  (*Id.*).

copy of the data they compile from their surveys, including a copy of any seismic lines they prepare.  Operations Regulations, § 25.  Surveyors must also keep their own copy of the compiled data and seismic lines inside Canada.  For 15 years after collecting the data, surveyors may not destroy their copies or move them outside the country without the Petroleum Board's permission. Operations Regulations, § 26.

The Implementation Act originally required the Board to keep the seismic line and other data surveyors filed confidential for five years.  *See* Implementation Act, § 119.  In practice, the Petroleum Board observes a 10-year confidentiality period before it will copy and disclose the data to third parties.  (Docket Entry No. 10, Ex. G).  The Act states that the information "may be disclosed" after the confidentiality period expires."  Implementation Act, § 119.

The Petroleum Board regularly receives requests for information that it has obtained from operators and surveyors.  If the  confidentiality period has expired, the Petroleum Board provides the requested copies.  On multiple occasions, the Petroleum Board has sent the Geophysical seismic lines to third parties who followed the Board's procedure for requesting copies.  (Docket Entry No. 14-1, Ex. 4).

In addition to these disclosure provisions, and without regard to the 10-year confidentiality period, the Implementation Act gives the Petroleum Board the right to give the Federal Minister and the Provincial Minister access to the information the Board maintains. Implementation Act, § 18.  The Board may also disclose "documentation relating to a significant discovery" to any offshore-interest owner who needs the information to comply with a drilling order from the Petroleum Board.  Implementation Act, § 77.

Geophysical applied for and obtained a work authorization from the Petroleum Board to

4

conduct offshore seismic surveys.  In 1982, Geophysical completed the NF-82 Survey, covering 7,309 kilometers in the offshore waters of Newfoundland and Labrador.  Geophysical created seismic lines from the data it gathered and submitted copies of each to the Petroleum Board. (Docket Entry No. 1 at p. 8; Docket Entry No. 10, Ex. D, at pp. 3–4).

In 1999, long after the 10-year confidentiality period ended, TGS sent the Petroleum Board an e-mail from its Houston office, asking for copies of certain seismic lines Geophysical had prepared and filed after completing its NF-82 survey.  TGS filled out the Petroleum Board's "Disclosure Agreement — Information Requests" form, which included the following statement:

> The applicant understands and agrees that information and data contained in these materials are being disclosed in accordance with the Accord Acts and that such disclosure could be challenged under the intellectual property laws of Canada.  The applicant agrees to use these materials in a manner consistent with those laws.

(Docket Entry No. 14, Ex. 3).  The form also stated that "[t]he [Petroleum Board] makes no representation or warranty as to the existence or absence of any trademark, copyright, or other ownership rights in respect to the disclosed information and data."  (*Id.*).

The Petroleum Board made the copies of the Geophysical seismic lines TGS requested. The Board sent the copies to TGS's Houston address and charged TGS $97.75.  (Docket Entry No. 1, Ex. A).

Geophysical alleges that in 2002 to 2003 and again in 2012 to 2013, TGS took the copies of the Geophysical seismic lines it had received from the Petroleum Board, went to the same locations Geophysical had surveyed, and took its own seismic-line measurements at those locations.  TGS then used this data to prepare its own seismic lines, labeled as OB-102, OB-

107,[2] and NE Newfoundland Flemish Pass.  (Docket Entry No. 1 at p. 10).  TGS sold licenses to these lines, without referring to  Geophysical or its copyrights.  (*Id.*).

Geophysical filed this suit against TGS in May 2014.  Geophysical alleges that TGS contributorily infringed its copyrights in the 1982 seismic lines on file with the Canadian Petroleum Board by requesting copies.  Geophysical alleges that TGS also infringed by giving copies of what it received from the Board to third parties and by creating derivative works from the copyrighted seismic lines and licensing them to third parties.  According to Geophysical, TGS created derivative works by using the locations disclosed in the Geophysical seismic lines to survey, collect its own data, and make its own seismic lines.  Geophysical alleges that TGS infringed by licensing these seismic lines and distributing copies without including Geophysical's copyright-management information.

Earlier in 2014, Geophysical had filed suit against TGS in Canada, alleging that it violated Canadian copyright laws.  (Docket Entry No. 10, Ex. D, *Geophysical v. TGS*, No. 2014 O1G 0067, filed in the Supreme Court of Newfoundland and Labrador, Trial Division).  In June 2014, Geophysical stopped prosecuting that case, informing the Canadian court that it intended instead to pursue its copyright claims in the United States courts.  (Docket Entry No. 15, Ex. D).

TGS has moved to dismiss Geophysical's suit, arguing that the complaint fails to state a claim and that the act-of-state doctrine and international comity preclude relief.[3]  The court heard argument on the motion.  At argument, counsel focused on TGS's position that Geophysical

---

[2] Geophysical refers to this seismic line as "OB JOT."  TGS has indicated that it is called "OB-107." (Docket Entry No. 10, p. 21 n. 15; Ex. D at ¶ 16).

[3] TGS also moved to abstain under *Colorado River* in favor of the then-pending Canadian court suit. Geophysical's decision not to prosecute that suit makes the motion to abstain moot.

consented to the Petroleum Board copying the seismic lines and distributing them to third parties on request.

The arguments for and against dismissal are analyzed below.

## II. The Motion to Dismiss for Lack of Subject-Matter Jurisdiction

TGS has moved to dismiss Geophysical's Copyright Act allegations under Rule 12(b)(6). The motion is based in part on the argument that the complaint does not allege an act of infringement  within the United States, and the Copyright Act does not cover extraterritorial acts of infringement.  Because this argument challenges the court's subject-matter jurisdiction, it is appropriately considered under Rule 12(b)(1), not 12(b)(6).

### A. Rule 12(b)(1)

"Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted).  Challenges to subject-matter jurisdiction may be facial or factual attacks. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).  A facial attack is made by filing a Rule 12(b)(1) motion without supporting evidence, challenging the court's jurisdiction based solely on the pleadings.  *Paterson*, 644 F.2d at 523).  The factual allegations are presumed true. "If those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (citing *Paterson*, 644 F.2d at 523).  To the extent TGS's motion to dismiss is based on a lack of subject-matter jurisdiction, the challenge is a facial attack, based on the pleadings, with no additional evidence.

**B.      The Copyright Act Applies to TGS's Conduct in the United States**

Federal courts have subject-matter jurisdiction under the Copyright Act only over infringing acts that occur within the United States. *See Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004); 28 U.S.C. § 1338(a). The Act has no extraterritorial reach. *See Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1366 (Fed. Cir. 2008); *Liberty Toy Co., Inc. v. Fred Silber Co.*, 149 F.3d 1183 (6th Cir. 1998) (unpublished). Although some of the alleged infringing acts may occur outside the United States, at least one must take place within this country. *See Palmer*, 376 F.3d at 1258 (the court had subject-matter jurisdiction under the Copyright Act because the complaint alleged that the defendant imported infringing goods for resale in the United States); *Liberty Toy*, 149 F.3d 1183 (although the allegedly infringing merchandise was from outside the United States, the defendant paid for, received, and distributed that merchandise in the United States); *Yesh Music v. Lakewood Church*, No. 4:11-cv-3095, 2012 WL 524187, at *3 (S.D. Tex. Feb. 14, 2012) (the defendants communicated from inside the United States with television stations located outside the United States to induce the stations to broadcast the copyrighted work).

Geophysical alleges that TGS initiated copyright infringement in Houston when it emailed the Petroleum Board asking for copies of Geophysical's seismic lines. Geophysical also alleges that TGS committed a domestic copyright violation by importing infringing copies of the seismic lines into the United States and by selling copies of, as well as works derivative from, the copyrighted lines out of the TGS Houston office. These allegations show subject-matter jurisdiction over the copyright infringement claims. To the extent the motion to dismiss is based on a lack of subject-matter jurisdiction, it is denied.

8

### III.    The Motion to Dismiss for Failure to State a Claim

TGS also moves to dismiss on the basis that the complaint fails to state a claim, for

reasons separate from the lack of subject-matter jurisdiction.  The analysis is under Rule

12(b)(6).

#### A.    The Legal Standard under Rule 12(b)(6)

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to

state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) is read

in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing

that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A complaint must contain "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v.

Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Rule 8 "does not

require 'detailed factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and

conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'"

*Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at

557).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual

allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual

allegations that when assumed to be true 'raise a right to relief above the speculative level.'"

*Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550

U.S. at 555).  "Conversely, 'when the allegations in a complaint, however true, could not raise a

claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of

minimum expenditure of time and money by the parties and the court.'"  *Id.* (quoting *Twombly*,

550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the

plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with

prejudice, unless it is clear that to do so would be futile.  *See Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford

plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it

is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or

unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied

leave to amend a complaint if the court determines that "the proposed change clearly is frivolous

or advances a claim or defense that is legally insufficient on its face."  6 CHARLES A. WRIGHT,

ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed.

1990); *see also Ayers v. Johnson*, 247 Fed. App'x 534, 535 (5th Cir. 2007) ("'[A] district court

acts within its discretion when dismissing a motion to amend that is frivolous or futile.'"

(quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d

10

765, 771 (5th Cir. 1999))).

In considering a Rule 12(b)(6) motion to dismiss, a court limits itself to the contents of the pleadings, with an exception.  In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), the Fifth Circuit approved the district court's consideration of documents the defendant attached to a motion to dismiss. The Fifth Circuit made it clear that "such consideration is limited to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins*, 224 F.3d at 498–99). Other courts approve the same practice.  *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (citations omitted)); *see also Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1988) (citation omitted); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

When "matters outside the pleadings" are submitted in support of or in opposition to a Rule 12(b)(6) motion to dismiss, Rule 12(b) grants courts discretion to accept and consider those materials, but does not require them to do so.  *See Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir. 1999); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir. 1988) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366).  A court exercises this discretion by determining whether the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate disposing of the action.  *Isquith*, 847 F.2d at 193 n. 3. If the court decides to consider such extraneous material, then the court

must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56.  FED. R.

CIV. P. 12(d).  If the court refuses to consider those materials outside the pleadings, then the Rule

12(b)(6) motion remains intact and may be decided on its merits under the appropriate standard

of review.

### B.      Analysis

"To prove copyright infringement a party must show that '(1) he owns a valid copyright

and (2) the defendant copied constituent elements of the plaintiff's work that are original.'"

*Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012) (quoting *Positive Black*

*Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other*

*grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)).  To establish the ownership

element, the plaintiff must show that the material is original and can be copyrighted, and that the

plaintiff has complied with all statutory formalities.  *Id.*  The copying element is met by proving

"(1) factual copying and (2) substantial similarity."  *Id.* at 393 (quoting *Lakedreams v. Taylor*,

932 F.2d 1103, 1107 (5th Cir. 1991)).

It is undisputed that Geophysical's seismic lines are copyrighted under Canadian law.

Factual copying is also undisputed.  The first critical dispute is over whether the Petroleum

Board was authorized to copy the seismic lines Geophysical had filed and to distribute the copies

to third parties.  The second critical dispute is over whether TGS's subsequent use of the copies

it received was infringing.  Both disputes are analyzed below.

### 1.      The Petroleum Board Was Authorized to Copy Geophysical's Seismic Lines

"'A copyright owner may grant a license in his work, thereby waiving his right to sue the

licensee for copyright infringement.'"  *Recursion Software, Inc. v. Interactive Intelligence, Inc.*,

425 F. Supp. 2d 756, 771 (N.D. Tex. 2006) (quoting *Pavlica v. Behr*, 397 F. Supp. 2d 519, 526

(S.D.N.Y. 2005)).  "[T]he existence of a license authorizing the use of copyrighted material is an

affirmative defense to an allegation of infringement."  *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451

n. 5 (5th Cir. 2003).  The defendant has the burden of proving that a license exists.  *Id.*; *see also*

*Ramirez v. Nichols*, No. 10-20806, 496 Fed. App'x 383, 2012 WL 5377683, at *1 (5th Cir. 2012)

(unpublished); *Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 884 (5th Cir. 1997)

(citing *CMS Software Design Sys., Inc. v. Info Designs, Inc.*, 785 F.2d 1246, 1248 (5th Cir.

1986)).

Geophysical argues that TGS caused the Canadian government to infringe its copyrights

by requesting copies of certain seismic lines from the Petroleum Board.  According to

Geophysical, the  Petroleum Board also infringed because it made the copies without

Geophysical's authorization.  (Docket Entry No. 1 at p. 12).  For TGS to have contributed to

infringement as alleged, the Petroleum Board must have lacked authorization to make the copies

and send them to TGS.

In its surreply, Geophysical admits that when it applied for authorization to survey in the

Newfoundland offshore waters and agreed to obey the Operations Regulations, it agreed to the

Regulations allowing the Petroleum Board to show the copyrighted Geophysical seismic lines to

third parties.  Geophysical argues that the Operations Regulations only allow the Petroleum

Board to make the information it requires and retains available to the public for on-site

inspection at the Board's location in Canada, not to copy the information and send it elsewhere.

(Docket Entry No. 20 at pp. 3–4) ("Had a TGS[] employee traveled to Canada to view

[Geophysical's] Works and made no copies then no Copyright violation could be pled.").

Geophysical argues that the Regulations did not give the Petroleum Board authority to make copies or distribute the information it retained to TGS, even after the confidentiality period expired.

The statutory and regulatory language and context shows that the Petroleum Board's rights in the data are not so limited.  Under the Implementation Act, no geophysical and seismic surveys may  be conducted in Newfoundland's offshore waters unless the surveyor applies for and receives permission from the Petroleum Board and agrees to obey the Operations Regulations.  Implementation Act, § 137.  A condition of conducting seismic surveys in those waters is that the surveyor must submit a copy of all the resulting seismic data to the Chief Conservation Officer of the Petroleum Board in an approved format.  Operations Regulations, §§ 25(i)(j), 26.  Under § 122 of the Implementation Act, the Petroleum Board must treat the data as confidential for a set number of years.  After the confidentiality period ends, the information "may be disclosed" in response to requests.  Section 18 of the Implementation Act allows the Board to disclose any information it receives to the Federal Minister and the Provincial Minister on request, without obtaining the consent of any interested person.  Implementation Act, § 18. The Board may also disclose "documentation relating to a significant discovery" to any offshore-interest owner who needs the information to comply with a drilling order from the Petroleum Board.  Implementation Act, § 77.  These disclosures are not subject to the confidentiality period.

In addition, each surveyor must keep a copy of its own data and may not destroy it or remove it from Canada without the Petroleum Board's permission.  *Id*., § 26.  The Implementing Act and Operations Regulations do not impose limits on the Petroleum Board's authorization or

right to copy and distribute the surveys it collects and retains, other than the 10-year confidentiality period that applies to most disclosures.

Neither the Act nor the Regulations contain language limiting the Petroleum Board's authority to copy and distribute the seismic line and other data it requires surveyors to submit. To the contrary, the language shows that the Board's authority is broad. The Board is authorized to require surveyors to submit copies of the seismic lines and to refrain from destroying or removing their own copies without the Board's permission for 15 years. The Board is required to keep the data confidential for 5 years, which it has in practice extended to 10. After that period ends, the data "may be disclosed." The language shows an intent to give the Board extensive control over the data, including the right to copy and distribute it after the confidentiality period ends. The intent to give the Board authority to copy and share the information it receives after confidentiality is no longer protected is consistent with the stated purposes of the Implementation Act. Those purposes are to encourage both the exploitation and conservation of Canada's petroleum resources, and to promote joint production agreements. The Board's ability to share the information it receives with third parties is consistent with the legislative intent to promote and encourage efficient exploration and extraction activities. The statutory and regulatory language and purpose offer no support for Geophysical's argument that the Board's rights in the data it receives are limited to making that data available for on-site inspection. Instead, the Implementation Act and Operations Regulations limit the surveyors' rights in the data, not the Board's.

A Canadian court has reached the same conclusion. In 2002, Geophysical filed suit in Canadian federal court challenging the validity of the Implementation Act and Operations

Regulations at issue here.  In 2003, the Federal Court of Canada ruled that the Regulations authorized the Petroleum Board  to retain surveyors' data and provide it to third parties, "putting it essentially in the public domain."  The Federal Court also ruled that these Regulations were not *ultra vires*.  (Docket Entry No. 10, Ex. 5, at p. 9 (*Geophysical Serv. Inc. v. CNOPB et al.*, 2003 FCT 507 (Fed. Ct. Canada 2003)).

Geophysical agreed to comply with the Implementation Act and the Operations Regulations when, as a condition of surveying, it agreed to file the resulting seismic data with the Petroleum Board.  By filing the data with Petroleum Board, Geophysical authorized the Petroleum Board to copy and distribute the data.  Geophysical's authorization undermines its claim against TGS for contributory copyright infringement.

Even if Geophysical's agreement to follow and be subject to the Implementation Act and related Regulations did not expressly give the Board authorization to copy and distribute the seismic lines, Geophysical's complaint allegations show that it granted the Petroleum Board an implied license to use and copy its seismic lines.   Geophysical's allegations, and the 2003 Canadian court ruling denying Geophysical's challenge to the Regulations permitting copying and disclosure, establish that Geophysical has known, for many years, that after the confidentiality period, the Petroleum Board gives third parties copies of the seismic lines surveyors had filed.  The allegations show that, at a minimum, Geophysical knew of and allowed itself to be subject to this practice.  Courts have held that such knowledge and acquiescence show an encouragement of the allegedly infringing practice.

Under § 204 of the Copyright Act, a grant of an exclusive license must be in writing.  A nonexclusive license, by contract, "may be granted orally, or may even be implied from

conduct." *Lulirama*, 128 F.3d  at 879 (quoting 3 MELVILLE B. NIMMER & DAVID NIMMER ON COPYRIGHT § 10.03[A], at 10-40, 10-41 (1997) ("When the totality of the parties' conduct indicates an intent to grant such permission, the result is a legal nonexclusive license. . . .")); *see also Psihoyos v. Pearson Educ., Inc.*, 885 F. Supp. 2d 103, 119 (S.D.N.Y. 2012) (quoting *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997)).  "[C]onsent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing" *Keane*, 968 F. Supp. at 947 (internal quotation omitted).

The typical implied-license case involves three factors: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Lulirama*, 128 F.3d at 879; *see also Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235–36 (11th Cir. 2010) (the plaintiff granted an implied license to the defendants because he created the copyrighted artwork at the defendants' request, delivered it to the defendants, and knew that the artwork would be used to promote the defendants' product and would be photographed by the media); *IAE Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) (implying a nonexclusive license because the plaintiff had created the work to fill a specific request and had given it to the defendant intending that it be copied and distributed); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 at 558–59 (9th Cir. 1990) (finding that the plaintiff "created a work at [the] defendant's request and handed it over, intending that defendant copy and distribute it").

In *Baisden v. I'm Ready Productions*, 693 F.3d at 501, the Fifth Circuit held that an implied license could also arise when these three factors were not present.  The court upheld a

17

judgment based on the jury's verdict that the plaintiff, a novelist, had granted the defendants an implied license to sell DVD adaptions of his novels.  The evidence showing the plaintiff's intent to grant an implied license included that he had signed copies of the DVDs at events promoting his novels, had discussed the DVDs without mentioning infringement claims, and had continued an existing merchandising relationship with the alleged infringer.

Under *Baisden*, the touchstone for finding an implied license is intent.  *See id.* at 501; *see also John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 40 (1st Cir. 2003).  "Without intent [to permit the use], there can be no implied license."  *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).  "Consent for an implied license may take the form of permission or lack of objection."  *Baisden*, 693 F.3d at 500 (quoting *Lulirama*, 128 F.3d at 879).  "When the totality of the parties' conduct indicates an intent to grant such permission, the result is a legal nonexclusive license."  *Lulirama*, 128 F.3d at 879 (quoting 3 Nimmer, § 10.03[A], at 10-41).

A party who knows of and encourages copying grants an implied license to the copier to do so.  In *Field v. Google*, 412 F. Supp. 2d 1106 (D. Nev. 2006), for example, the court stated the rule that a party's consent "need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it."  *Id.* at 1115.  The issue was whether the  plaintiff, Field, had given Google an implied license to make "cached" copies of copyrighted works on the plaintiff's webpages, store those cached copies on its servers, and provide copies to Google's users on request.  *Id.* at 1116.  The court noted that the plaintiff was aware that a website creator or author could include in the website code instructions to prevent a search engine from storing cached copies of a webpage from that site.  The plaintiff, however, had chosen not to do so.  The court held that because the plaintiff had "knowledge of how

18

Google would use the copyrighted works he placed on those pages, and [had] knowledge that he could prevent such use, [and] instead made a conscious decision to permit it," "[h]is conduct [was] reasonably interpreted as the grant of a license to Google for that use."  *Id.* at 1116.[4]

*Falcon Enterprises, Inc. v. Publishers Service, Inc.*, 438 Fed. App'x 579, 581 (9th Cir. 2011), is also illustrative.  The court held that the plaintiff had granted the defendant-publisher an implied license to republish images without asking for permission each time.  The court noted that the plaintiff's assertion that the publisher needed to ask permission each time it used the images was "contradicted by the frequent and informal interactions between the parties," and by the fact that the images were given to the publisher "without any restrictions or promises of exclusivity."  *Id.* Similarly, in *Asset Marketing Systems*, 542 F.3d at 756–57 (9th Cir. 2008), the plaintiff had created  custom software for the defendant.  The Ninth Circuit ruled that the parties' contracts, both signed and unsigned, showed no intent by the parties to limit the defendant's use of the software by time or scope.  The Ninth Circuit noted that the software the plaintiff created for the defendant was "far less valuable" to the defendant if it could not be modified.  The court found that the plaintiff had granted the defendant an implied license to use and modify the software because, "[u]nder the circumstances, it defies logic that [the defendant] would have paid [the plaintiff] for his programming services if [the defendant] could not have used the

---

[4] Other courts have reached similar results. *See also Karlson v. Red Door Homes, LLC*, No. CV-11-J-1511-NE, 2014 WL 1765186 (N.D. Ala. Apr. 30, 2014) (finding an implied license to copy and distribute the plaintiff's work where the plaintiff "knew the defendants were going to display his designs to their licensees and customers"); *Parker v. Yahoo!, Inc.*, No. Civ. A. 07-2757, 2008 WL 4410095, at *4 (E.D. Pa. Sept. 25, 2008) ("From [the plaintiff's] silence and lack of earlier objection, the defendants could properly infer that [the plaintiff] knew of and encouraged the search engines' activity, and . . . they could reasonably interpret [his] conduct to be a grant of a license for that use."); *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164, 1177–78 (E.D. Cal. 2006) (the copyright holder granted an implied license by accepting royalties from the defendant for its use of the copyrighted song).

19

programs without further payment pursuant to a separate licensing arrangement that was never mentioned in the [parties' signed contract], and never otherwise requested at the time." *Id.*

Geophysical is a Canadian company and had dealt frequently with the Petroleum Board before agreeing to subject itself to the Act and Regulations, including filing its 1982 seismic lines with the Board.   Geophysical knew that the Board would treat the seismic lines as confidential for only 10 years.  Geophysical also knew that after that period, the Board's practice was to make copies and disclose the seismic line data to third parties who asked for it.  By giving the Petroleum Board its copyrighted seismic lines under those conditions, with no effort to restrict the Board's use either before giving the seismic lines to the Board or after the confidentiality period ended, Geophysical granted the Board an implied license to use the seismic lines and to make copies of them for third parties.

Geophysical argues that its authorization was limited to allowing the Petroleum Board to use the copyrighted information for itself and to show it to third parties on-site.  The statutory and regulatory language does not show that Geophysical had the authority to restrict the Petroleum Board's ability to copy and distribute the seismic lines in this fashion.  Instead, the language shows that the Board had the authority to send requesting third parties copies of the seismic lines and did not have to limit third-party access to on-site inspection.  And there is no allegation that Geophysical instructed or asked the Board to limit third-party access to the copyrighted seismic lines.  "[A]n implied license will be limited to a specific use only if that limitation is expressly conveyed when the work is delivered." *Latimer*, 601 F.3d at 1235; *see also Asset Marketing Sys.*, 542 F.3d at 756.  Geophysical's allegations show a broad implied license to the Petroleum Board, allowing the Board to use the copyrighted seismic lines, and,

when the confidentiality period ended, to make copies and give them to third parties who submitted requests.  The claim that TGS contributorily infringed Geophysical's copyrights by asking the Petroleum Board for copies of Geophysical's seismic lines fails to state a plausible claim for relief and is dismissed.  No leave to amend is granted because amendment would be futile.

### 2. TGS's Importation of the Copies Was Protected Under the First-Sale Doctrine

Under the Copyright Act, "[i]mportation into the United States, without the authority of the owner of copyright under this title, of copies . . . of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies."  17 U.S.C. § 602(a)(1).

The first-sale rule, codified in 17 U.S.C. § 109, permits the owner of a lawfully made copy of a copyrighted work to "bring that copy into the United States (and sell it or give it away) without obtaining permission to do so from the copyright owner."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1355 (2013).

The Petroleum Board's authorization to make and distribute copies of Geophysical's seismic lines means that the copies were lawfully made.  Their importation was protected under the first-sale doctrine.  *See Litecubes*, 523 F.3d at 1371.  The infringement claims based on TGS's importation of the copies the Petroleum Board made is dismissed.  No leave to amend is granted because amendment would be futile.

### 3. The Complaint Does Not State a Claim for Infringement Based on TGS's Subsequent Acts

Geophysical alleged that TGS made copies of its copyrighted seismic lines and created

derivative works, and distributed the copies and the derivative works without Geophysical's permission and without Geophysical's copyright-management information attached, in violation of 17 U.S.C. § 501 and 17 U.S.C. § 1202(b).  The basis for these claims is Geophysical's allegation that, after obtaining copies of Geophysical's seismic lines from the Petroleum Board, TGS went to the locations where Geophysical had done the surveying for those lines and did its own surveys, generating the TGS seismic lines labeled as OB-102, OB-107, and NE Newfoundland Flemish Pass. (Docket Entry No. l at p. 10).

Geophysical does not allege that TGS used Geophysical's proprietary techniques to collect the data at these locations or to generate the OB-102, OB-107, and NE Newfoundland Flemish Pass seismic lines.  Nor does Geophysical allege that instead of using the data it collected from its own surveys to generate the seismic lines, TGS used data from the copies of the 1982 Geophysical seismic lines.  Geophysical appears to claim that TGS copied and sent to others Geophysical's seismic lines.  Geophysical also appears to claim that by surveying in the same locations shown in the seismic lines the Board sent, and by licensing third parties to use the seismic lines TGS generated from its own surveys in those locations, TGS "copied or distributed" Geophysical's copyrighted works and, in the process, "removed or altered GSI's CMI" in those works.  (*Id.*).

To the extent that Geophysical alleges TGS infringed by copying the seismic lines it received from the Petroleum Board and sending them to others, the allegations do not state a claim. Geophysical acknowledged in its response to the motion to dismiss that, although it believes it is "likely" that TGS made scans of Geophysical's copyrighted information, "whether this occurred or not is currently unknown."  (*Id.* at p. 4).  Geophysical's allegations that TGS

copied and distributed its copyrighted seismic lines without including the copyright-management information are conclusory and speculative.

To the extent Geophysical's complaint alleges that TGS infringed by using the seismic lines the Board sent to find the locations for its own surveying work, the allegations are speculative and fail to state a plausible claim. Geophysical acknowledged in its complaint that TGS "is free to acquire their own dataset over the exact area as that covered by GSI's seismic lines." (Docket Entry No. 1 at p. 7). Geophysical admitted in its response to the motion to dismiss that it "has not seen the TGS[] surveys in question." (Docket Entry No. 13 at p. 19). And there is no allegation of facts that, if proven, would support an inference that using lawfully disclosed seismic lines to find locations to survey would itself be an infringing use.

The claims based on TGS's actions after receiving the copies from the Petroleum Board are dismissed. Dismissal of these claims is without prejudice. Geophysical may amend its complaint before **April 24, 2015**, to add allegations, consistent with Rule 11, that would, if proven, show a plausible claim for relief.

## IV.   The Act-of-State Doctrine and International Comity

The act-of-state doctrine requires that a lawsuit be dismissed if it requires an American court to declare an official act of a foreign sovereign "invalid, and thus ineffective as 'a rule of decision for the courts of this country.'" *W.S. Kirkpatrick Co. v. Environ. Tectonics Corp., Int'l,* 493 U.S. 400, 409 (1990). The doctrine "limits, for prudential rather than jurisdictional reasons, the adjudication in American courts of the validity of a foreign sovereign's public acts," enhancing "the ability of the Executive Branch to engage in the conduct of foreign relations by preventing courts from judging foreign public acts." *Walter Fuller Aircraft Sales, Inc. v. Republic of the Philippines*, 965 F.2d 1375, 1387 (5th Cir. 1992) (citing *Banco Nacional de*

23

*Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964)).  "When determining whether the act of state doctrine limits adjudication in American courts, we look not only to the acts of the named defendants, 'but [to] any governmental acts whose validity would be called into question by adjudication of the suit.'" *Id.* (quoting *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1113 (5th Cir. 1981)).  "Act of state issues only arise when a court *must decide* — that is, when the outcome of the case turns upon — the effect of official action by a foreign sovereign.  When that question is not in the case, neither is the act of state doctrine."  *Kirkpatrick*, 493 U.S. at 406 (emphasis in original); *see also Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 372 n. 14 (5th Cir. 2004) ("[T]he act of state doctrine applies only when the dispute implicates the legitimacy of public acts undertaken by a sovereign nation.").

Geophysical's argument that TGS and the Petroleum Board are jointly and severally liable for the alleged copyright infringement does not require this court to decide whether an official act of the Canadian government is invalid.  Geophysical's claims against TGS depend on whether Geophysical agreed to permit the Board to copy and disclose its seismic lines to third parties such as TGS.  The court has found that Geophysical's allegations fail to state a claim for contributory copyright infringement.  Geophysical's consent to the disclosure of its copyrighted information precludes a finding that TGS contributorily infringed Geophysical's copyrights by asking the Petroleum Board to make copies of Geophysical's copyrighted works and send them to TGS.  This holding does not require the court to decide whether acts of the Canadian government within Canada were unlawful and does not otherwise intrude on the laws and interests of the Canadian government.  The act-of-state doctrine does not require dismissal because the case appears to be subject to resolution on grounds that do not implicate that doctrine.

24

This case is similar to *Kilpatrick*, in which the Supreme Court held that the act-of-state doctrine did not apply to the plaintiff's claims that the defendant had acquired its contract with the Nigerian government through bribery. *Id.* at 406. The Supreme Court held that "[r]egardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires." *Id.*; *see also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964).

The court has found that Geophysical's claims related to TGS's subsequent use of the data failed to state a plausible claim because Geophysical did not sufficiently allege that TGS actually copied its copyrighted data rather than gathering its own data in the same locations. These claims do not require the court to determine whether an act of the Canadian government is invalid. The act- of-state doctrine does not apply to these claims.

TGS also moves to dismiss Geophysical's claims on the basis of international comity. "Dismissal of a suit on international comity grounds may sometimes be appropriate when there is litigation pending in a foreign forum or, even absent such litigation, when allowing a case to proceed in the United States would intrude on the interests of a foreign government." *Perforaciones Exploracion y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 Fed. App'x 675, 681 (5th Cir. 2009) (unpublished).

Geophysical also argues that even if the Canadian law allowed the Petroleum Board to make copies of Geophysical's lines, that law was invalid and "cannot be applied in contravention of U.S. public policy principles embodied in the Copyright Act." (Docket Entry No. 20 at p. 5). To the extent that Geophysical asks this court to decide that Canadian legislation and regulations authorizing the Petroleum Board to use Geophysical's data were invalid because they violated

25

U.S. or Canadian copyright laws, the court would dismiss based on the act-of-state doctrine and international comity.

**V.      Conclusion**

TGS's motion to dismiss, (Docket Entry No. 10), is granted.  The claims based on TGS's requests to the Petroleum Board to send copies of Geophysical's 1982 seismic lines to TGS's office in the United States are dismissed with prejudice and without leave to amend.  The claims based on TGS's copying and distribution of Geophysical's seismic lines and TGS's use of those lines to decide where to conduct the surveys it used to generate the OB-102, OB-107, and NE Newfoundland Flemish Pass seismic lines are dismissed, without prejudice and with leave to amend.  Geophysical may file an amended complaint no later than **April 24, 2015**.

SIGNED on March 30, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

26