United States District Court
Southern District of Texas
**ENTERED**
November 09, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEOPHYSICAL SERVICES, INCORPORATED, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 14-1368 |
| TGS-NOPEC GEOPHYSICAL SERVICES, | § § § § | |
| Defendant. | § | |

**ORDER GRANTING MOTION TO RECONSIDER, VACATING MARCH 30, 2015 MEMORANDUM AND OPINION, AND ISSUING AMENDED MEMORANDUM AND OPINION**

Geophysical Services, Incorporated sued TGS-Nopec Geophysical Services ("TGS") under the federal Copyright Act, 17 U.S.C. § 505 *et seq.* TGS moved to dismiss for failure to state a claim and because the act-of-state doctrine and international comity precluded the relief Geophysical sought. (Docket Entry No. 10). Geophysical responded, TGS replied, and Geophysical surreplied, (Docket Entry Nos. 13, 16, 20), and counsel presented oral argument. The court granted the motion, dismissing some of Geophysical's claims with prejudice and others with leave to amend. (Docket Entry No. 28). Geophysical did not file an amended complaint but instead moved for reconsideration, arguing manifest error. (Docket Entry No. 32). TGS responded, Geophysical replied, and TGS surreplied. (Docket Entry Nos. 36, 39, 40). Geophysical also filed a supplement to its motion for reconsideration, and TGS submitted a supplemental response. (Docket Entry Nos. 41–42). The parties' briefing on reconsideration correctly pointed out that the court's March 30, 2015 opinion relied on grounds the parties had not expressly raised and provided helpful analysis

and argument that were not presented earlier.

Based on the pleadings, the motions and responses, and the applicable law, the court grants Geophysical's motion for reconsideration, vacates the March 30, 2015 Memorandum and Opinion, and issues this amended Memorandum and Opinion in its place. On reconsideration, although the analysis and grounds are different, the outcome is not. The court again grants the motion to dismiss. Geophysical's complaint is dismissed with prejudice, and final judgment is entered by separate order. The reasons are explained below.

**I.      Background**

Geophysical is a Canadian company that collects, prepares, and licenses seismic data, including seismic lines. (Docket Entry No. 1 at p. 2).[1] Geophysical licenses its seismic lines to oil- and gas-exploration companies.

Various Canadian laws govern seismic surveying in Canada's offshore waters. The federal government of Canada and the provincial government of Newfoundland and Labrador enacted the Canada-Newfoundland Atlantic Accord in 1985. The Accord's objectives were "to provide for the development of oil and gas resources offshore Newfoundland for the benefit of Canada as a whole and Newfoundland in particular" and "to protect, preserve and advance the attainment of national self-sufficiency and security of supply." (Docket Entry No. 10, Ex. A). The federal and provincial governments enacted mirror legislation, the Canada-Newfoundland Offshore Petroleum Resources Accord Implementation Act, (the "Implementation Act"), to implement the Accord. S.C. 1988, c.

---

[1] A seismic line is taken in offshore waters and is a two-dimensional depiction of the earth's structure below the ocean floor, revealing a cross-section picture of the earth's rock layers. (Docket Entry No. 1 at p. 3). The picture is intended to be an accurate depiction of the earth's structure. Two seismic lines taken at the same location may vary depending on the acquisition parameters selected by the surveyor, proprietary processing technology, and decisions about how to process and assemble the data. (*Id.*).

28; R.S.N.L. 1990 c. C-2, (Docket Entry No. 10, Ex. B).

The Implementation Act authorized the adoption of the Newfoundland Offshore Area Petroleum Geophysical Operations Regulations (the "Operations Regulations"). SOR-95-334, (Docket Entry No. 10, Ex. C). The Implementation Act also established the Canada-Newfoundland Offshore Petroleum Board (the "Petroleum Board"). The Petroleum Board is a government agency that oversees regulatory compliance with the Accord, the Implementation Act, and the Operations Regulations. (Docket Entry No. 1 at p. 9). The Implementation Act and the Operations Regulations apply to all exploration and extraction activities in Newfoundland's offshore waters. A surveyor intending to conduct seismic studies in those waters must first apply to the Petroleum Board for authorization and agree to follow the safety and reporting requirements established by the Board and by Canadian law. Operations Regulations §§ 3, 4.

The Operations Regulations require geophysical surveyors to give the Petroleum Board a copy of the data they compile from their surveys, including a copy of any seismic lines they prepare. Operations Regulations § 25. Surveyors must also keep their own copy of the compiled data and seismic lines inside Canada. For 15 years after collecting the data, surveyors may not destroy their copies or move them outside the country without the Petroleum Board's permission. Operations Regulations § 26.

The Implementation Act originally required the Board to keep the seismic line and other data surveyors filed confidential for five years. *See* Implementation Act § 119. In practice, the Petroleum Board observes a ten-year confidentiality period before it will copy and disclose the data to third parties. (Docket Entry No. 10, Ex. G). The Act states that the information "may be disclosed" after the confidentiality period expires. Implementation Act § 119.

The Petroleum Board regularly receives requests for information that it has obtained from operators and surveyors. If the confidentiality period has expired, the Petroleum Board provides the requested copies. On multiple occasions, the Petroleum Board has sent the Geophysical seismic lines to third parties who followed the Board's procedure for requesting copies. (Docket Entry No. 14-1, Ex. 4).

In addition to these disclosure provisions, and without regard to the ten-year confidentiality period, the Implementation Act gives the Petroleum Board the right to give the Federal Minister and the Provincial Minister access to the information the Board maintains. Implementation Act § 18. The Board may also disclose "documentation relating to a significant discovery" to any offshore-interest owner who needs the information to comply with a drilling order from the Petroleum Board. Implementation Act § 77.

Geophysical applied for and obtained a work authorization from the Petroleum Board to conduct offshore seismic surveys. In 1982, Geophysical completed the NF-82 Survey, covering 7,309 kilometers in the offshore waters of Newfoundland and Labrador. Geophysical created seismic lines from the data it gathered and submitted copies of each to the Petroleum Board. (Docket Entry No. 1 at p. 8; Docket Entry No. 10, Ex. D at p. 3–4).

In 1999, long after the ten-year confidentiality period ended, TGS sent the Petroleum Board an email from its Houston office, asking for copies of certain seismic lines Geophysical had prepared and filed after completing its NF-82 survey. TGS filled out the Petroleum Board's "Disclosure Agreement—Information Requests" form, which included the following statement:

> The applicant understands and agrees that information and data contained in these materials are being disclosed in accordance with the Accord Acts and that such disclosure could be challenged under the intellectual property laws of Canada. The applicant agrees to use

4

these materials in a manner consistent with those laws.

(Docket Entry No. 14, Ex. 3). The form also stated that "[t]he [Petroleum Board] makes no representation or warranty as to the existence or absence of any trademark, copyright, or other ownership rights in respect to the disclosed information and data." (*Id.*).

The Petroleum Board made the copies of the Geophysical seismic lines TGS requested. The Board sent the copies to TGS's Houston address and charged TGS $97.75. (Docket Entry No. 1, Ex. A).

Geophysical alleges that in 2002 to 2003 and again in 2012 to 2013, TGS took the copies of the Geophysical seismic lines it had received from the Petroleum Board, went to the same locations Geophysical had surveyed, and took its own seismic-line measurements at those locations. TGS then used this data to prepare its own seismic lines, labeled as OB-102, OB-107,[2] and NE Newfoundland Flemish Pass. (Docket Entry No. 1 at p. 10). TGS sold licenses to these lines, without referring to Geophysical or its copyrights. (*Id.*).

Geophysical filed this suit against TGS in May 2014. Geophysical alleges that TGS contributorily infringed its copyrights in the 1982 seismic lines on file with the Canadian Petroleum Board by requesting copies. Geophysical alleges that TGS also infringed by giving copies of what it received from the Board to third parties and by creating derivative works from the copyrighted seismic lines and licensing them to third parties. According to Geophysical, TGS created derivative works by using the locations disclosed in the Geophysical seismic lines to survey, collect its own data, and make its own seismic lines. Geophysical alleges that TGS infringed by licensing these

---

[2] Geophysical refers to this seismic line as "OB JOT." TGS has indicated that it is called "OB-107." (Docket Entry No. 10, p. 21 n. 15; Ex. D at ¶ 16).

seismic lines and distributing copies without including Geophysical's copyright-management information.

Earlier in 2014, Geophysical had sued TGS in Canada, alleging that it violated Canadian copyright laws. (Docket Entry No. 10, Ex. D, *Geophysical v. TGS*, No. 2014 O1G 0067, filed in the Supreme Court of Newfoundland and Labrador, Trial Division). In June 2014, Geophysical stopped prosecuting that case and informed the Canadian court that it intended instead to pursue its copyright claims in the United States courts. (Docket Entry No. 15, Ex. D).

TGS moved to dismiss Geophysical's suit and opposed the motion to reconsider the court's earlier dismissal order, arguing that the complaint fails to state a claim and that the act-of-state doctrine and international comity preclude relief.[3] The parties' arguments and responses are analyzed below.

## II. The Legal Standard Under Rule 12(b)(6)

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial

---

[3] TGS also moved to abstain under *Colorado River* in favor of the then-pending Canadian court suit. Geophysical's decision not to prosecute that suit makes the motion to abstain moot.

6

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (quoting *Twombly*, 550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or

unable to amend in a manner that will avoid dismissal."). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

In considering a Rule 12(b)(6) motion to dismiss, a court limits itself to the contents of the pleadings, with an exception. In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), the Fifth Circuit approved the district court's consideration of documents the defendant attached to a motion to dismiss. The Fifth Circuit made it clear that "such consideration is limited to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins*, 224 F.3d at 498–99). Other courts approve the same practice. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (citations omitted)); *see also Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1988) (citation omitted); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

When "matters outside the pleadings" are submitted in support of or in opposition to a Rule 12(b)(6) motion to dismiss, Rule 12(b) grants courts discretion to accept and consider those materials, but does not require them to do so. *See Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th

8

Cir. 1999); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366). A court exercises this discretion by determining whether the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate disposing of the action. *Isquith*, 847 F.2d at 193 n.3. If the court decides to consider such extraneous material, then the court must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56. FED. R. CIV. P. 12(d). If the court refuses to consider those materials outside the pleadings, then the Rule 12(b)(6) motion remains intact and may be decided on its merits under the appropriate standard of review.

### III. Direct Infringement

"To prove copyright infringement a party must show that '(1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original.'" *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012) (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)). To establish the ownership element, the plaintiff must show that the material is original and can be copyrighted and that the plaintiff has complied with all statutory formalities. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994). The copying element is met by proving "(1) factual copying and (2) substantial similarity." *Baisden*, 693 F.3d at 499 (quotation marks omitted).

Geophysical alleges that TGS violated 17 U.S.C. § 501 by copying copyrighted seismic lines, creating derivative works, and distributing the copies and the derivative works, all without Geophysical's permission. Geophysical alleges that, after asking for and receiving copies of Geophysical's seismic lines from the Petroleum Board, TGS went to the locations Geophysical had

9

surveyed for those lines and did its own surveys, generating the TGS seismic lines labeled as OB-102, OB-107, and NE Newfoundland Flemish Pass. (Docket Entry No. l at p. 10).

The allegation is not that TGS used Geophysical's proprietary techniques to collect the data at these locations or to generate the OB-102, OB-107, and NE Newfoundland Flemish Pass seismic lines. Nor does Geophysical allege that TGS used data from the copies of the 1982 Geophysical seismic lines to generate the seismic lines, instead of data collected from TGS's own surveys. Geophysical instead alleges that TGS copied and sent to others Geophysical's seismic lines. Geophysical also alleges that by surveying in the same locations shown in the seismic lines the Board sent, and by licensing third parties to use the seismic lines TGS generated from the surveys it conducted in those locations, TGS "copied or distributed" Geophysical's copyrighted works and, in the process, "removed or altered [Geophysical's copyright-management information]" in those works. (*Id.*).

To the extent that Geophysical's complaint alleges TGS infringed by copying the seismic lines it received from the Petroleum Board and sending them to others, the allegations do not state a claim. Geophysical acknowledged in its response to the motion to dismiss that, although it believes it is "likely" that TGS made scans of Geophysical's copyrighted information, "whether this occurred or not is currently unknown." (Docket Entry No. 13 at p. 10 n.3). Geophysical's allegations that TGS copied and distributed its seismic lines without including the copyright-management information are conclusory and speculative.

To the extent that Geophysical's complaint alleges that TGS infringed by using the seismic lines the Board sent to find the locations for its own surveying work, the allegations are speculative and fail to state a plausible claim. In its complaint, Geophysical acknowledged that TGS "is free

to acquire [its] own dataset over the exact area as that covered by GSI's seismic lines." (Docket Entry No. l at p. 7). In its response to the motion to dismiss, Geophysical admitted that it "has not seen the TGS[] surveys in question." (Docket Entry No. 13 at p. 25). And there are no factual allegations that, if proven, would support an inference that using lawfully disclosed seismic lines to find locations to survey would itself be an infringing use.

The claims based on TGS's actions after it received the copies from the Petroleum Board are dismissed. The court granted leave to amend on these claims, but Geophysical did not amend its complaint. The direct-infringement claims are dismissed with prejudice.

## IV.    Contributory Infringement

"One infringes contributorily by intentionally inducing or encouraging direct infringement . . . ." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). "[T]here can be no contributory infringement without a direct infringement." *Jaso v. Coca Cola Co.*, 537 F. App'x 557, 560 (5th Cir. 2013) (per curiam) (quoting *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004)); 3 MELVILLE B. NIMMER & DAVID NIMMER ON COPYRIGHT § 12.04[D][1] (2015) ("[T]he rule should generally prevail that third-party liability, as its name implies, may exist only when direct liability, *i.e.*, infringement, is present." (footnotes omitted)).

Geophysical alleges that TGS caused the Canadian government to infringe Geophysical's copyrights by asking the Petroleum Board for copies of the seismic lines. This argument necessarily means that the Petroleum Board directly infringed by making the copies without Geophysical's authorization. (*See* Docket Entry No. 1 at p. 12). TGS argues that the Copyright Act's lack of extraterritorial reach and the act-of-state doctrine separately preclude finding direct infringement by the Petroleum Board. Absent direct infringement, TGS argues, Geophysical's contributory-

infringement claim must fail.

### A.     Extraterritoriality

The Copyright Act does not apply extraterritorially.  *See, e.g.*, *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012) (per curiam); *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1366 (Fed. Cir. 2008); *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994) (en banc).  Infringement occurring entirely abroad is not actionable under the Copyright Act.  *Subafilms*, 24 F.3d at 1091.  TGS argues that Geophysical's complaint "fails to allege that TGS engaged in a single act of copyright infringement within the United States." (Docket Entry No. 10 at p. 16).  A statute's extraterritorial scope raises a merits question separate from determining subject-matter jurisdiction.  TGS properly advanced this argument in the context of a Rule 12(b)(6) motion for failure to state a claim.  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010); *see generally* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 401 cmt. a & c.

The interplay between extraterritoriality and contributory infringement under the Copyright Act means that Geophysical must allege an act of direct infringement occurring within the United States.  As one leading treatise explains:

> Accepting the proposition that a direct infringement is a prerequisite to third-party liability, the further question arises whether the direct infringement on which liability is premised must take place within the United States.  Given the undisputed axiom that United States copyright law has no extraterritorial application, it would seem to necessarily follow that a primary activity outside the boundaries of the United States, not constituting an infringement cognizable under the Copyright Act, cannot serve as the basis for holding liable under the Copyright Act one who is merely related to that activity within the United States.

3 NIMMER ON COPYRIGHT § 12.04[D][2] (footnotes omitted); *see also* 6 PATRY ON COPYRIGHT § 21:46 (2015) ("[S]ince an act occurring wholly overseas cannot violate U.S. copyright law, a claim

of contributory infringement based on contributory conduct that occurs in the U.S. fails as a matter of law" "where the claim of direct infringement occurs wholly overseas."); *Subafilms*, 24 F.3d at 1094 ("[W]e do not think Congress intended to hold a party liable for *merely* 'authorizing' [that is, contributory] conduct that, had the *authorizing* party chosen to engage in itself, would have resulted in no liability under the Act." (emphasis in original)).

"[T]he geographic location of the illegal reproduction is crucial. If the illegal reproduction . . . occurred [outside the United States], American copyright laws would have no application . . . ." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *Levitin v. Sony Music Entm't*, — F.3d —, 2015 WL 1849900, at *4 (S.D.N.Y. Apr. 22, 2015) ("[I]t is now generally accepted that there can be no liability under the Copyright Act for authorizing an act that itself could not constitute infringement of rights secured by United States law." (quotation marks omitted)).

The leading case is *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994) (en banc).[4] The plaintiff, Subafilms, held a copyright in the movie *Yellow Submarine*. *Id.* at 1089. In 1967, Subafilms and United Artists Corporation contracted for United Artists to distribute the film. Twenty years later, United Artists's successor, MGM, sought to distribute the movie on videocassette that consumers could play in their homes. Subafilms objected, arguing that the 1967 agreement did not grant MGM home-video rights. According to Subafilms, MGM nonetheless notified a third-party distributor, Warner Brothers, that it could distribute videocassette recordings of the film internationally. When Warner Brothers began international distribution of the movie on videocassette, Subafilms sued MGM for contributory copyright infringement and

---

[4] The Fifth Circuit has not addressed this issue. Although several courts have declined to follow its approach, *Subafilms* is recognized as the majority rule. *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 128–29 (D.D.C. 2011).

13

breach of contract. The Ninth Circuit panel opinion held that although "infringing actions that take place entirely outside the United States are not actionable under the Copyright Act, an act of infringement within the United States properly is alleged where the illegal authorization of international exhibitions takes place in the United States." *Id.* at 1090 (alterations omitted) (emphasis omitted) (quotation marks omitted).

The en banc Ninth Circuit reversed. The en banc court held that the panel erred because contributory infringement "is a form of third party liability that requires the authorized acts to constitute infringing ones." *Id.* at 1093. The panel failed to apply "this principle to the authorization of acts that cannot themselves be infringing because they take place entirely abroad." *Id.* Because the allegedly infringing acts committed by Warner Brothers—the alleged direct infringement—took place overseas and were not actionable under the Copyright Act, MGM could not be liable for contributory infringement arising from that conduct or for authorizing that conduct.

Like the plaintiff in *Subafilms*, Geophysical claims that a contributory infringer (here, TGS) can be held liable for authorizing conduct by a direct infringer (here, the Petroleum Board) that took place entirely abroad. Geophysical alleges that the Petroleum Board copied and distributed Geophysical's copyrighted material in Canada, not in the United States. (Docket Entry No. 1 at p. 11–12). That fails to state a claim for contributory infringement. Although TGS sent the request for copies to the Petroleum Board from Texas, "domestic authorization of wholly extraterritorial infringement does not constitute an act of infringement that circumvents the extraterritoriality rule." *Seals v. Compendia Media Group*, No. 02-C-0920, 2003 WL 731369, at *4 (N.D. Ill. Feb. 28,

2003).[5]  Although this analysis differs from the prior memorandum and opinion, the result is the same.

### B.      The Act-of-State Doctrine

Even assuming, without deciding, that extraterritoriality principles do not bar Geophysical's claims, the act-of-state doctrine does.  The act-of-state doctrine requires dismissing a lawsuit if it requires an American court to declare an official act of a foreign sovereign "invalid, and thus ineffective as a rule of decision for the courts of this country."  *W.S. Kirkpatrick & Co. v. Environ. Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990) (quotation marks omitted).  The doctrine "limits, for prudential rather than jurisdictional reasons, the adjudication in American courts of the validity of a foreign sovereign's public acts."  *Walter Fuller Aircraft Sales, Inc. v. Republic of the Philippines*, 965 F.2d 1375, 1387 (5th Cir. 1992).  "When determining whether the act of state doctrine limits adjudication in American courts, we look not only to the acts of the named defendants, 'but [to] any governmental acts whose validity would be called into question by adjudication of the suit.'"  *Id.* at 1387–88 (quoting *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1113 (5th Cir. 1985)).  "Act of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign.  When that question is not in the case, neither is the act of state doctrine."  *Kirkpatrick*, 493 U.S. at 406 (emphasis in original); *see also Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 372 n.14 (5th Cir. 2004) ("[T]he act of state doctrine applies only when the dispute implicates the legitimacy of public

---

[5] In its response to TGS's motion to dismiss, Geophysical relies on the predicate-act doctrine to support an extraterritorial application of the Copyright Act. (Docket Entry No. 13 at p. 19–20). That doctrine requires a predicate act of infringement *inside* the United States that initiates further infringement abroad. *See, e.g.*, *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 991–92 (9th Cir. 1998).  Geophysical has not alleged that the Petroleum Board committed a predicate infringing act in the United States.  The predicate-act doctrine does not apply.

acts undertaken by a sovereign nation.").

Geophysical's argument that TGS is contributorily liable for the Petroleum Board's direct infringement requires the court to decide whether an official act of the Canadian government is invalid. Geophysical's claims against TGS depend on whether the Petroleum Board directly infringed Geophysical's copyright when it copied the seismic lines at TGS's request and sent them to TGS. This requires the court to decide whether acts of the Canadian government within Canada were unlawful under the Copyright Act, which would clearly intrude on the laws and interests of the Canadian government. Geophysical's contributory-infringement claim requires the court to decide that Canadian legislation and regulations authorizing the Petroleum Board to use Geophysical's data were invalid because they violated U.S. law. *See Callejo*, 764 F.2d at 1116. The act-of-state doctrine leads to dismissal because the claims rest on grounds that cannot be resolved without implicating that doctrine.

Again, although this analysis differs from the March 30, 2015 Memorandum and Opinion, the outcome is unaffected. The contributory-infringement claim is dismissed with prejudice.

## V.     Illegal Importation

Under the Copyright Act, "[i]mportation into the United States, without the authority of the owner of copyright under this title, of copies . . . of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies . . . ." 17 U.S.C. § 602(a)(1). The first-sale rule, codified in 17 U.S.C. § 109, permits the owner of a lawful copy of copyrighted works to "bring that copy into the United States (and sell it or give it away) without obtaining permission to do so from the copyright owner[.]" *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1355 (2013).

Geophysical did not raise an infringement claim based on illegal importation in its complaint. Geophysical first raised this claim in the response to TGS's motion to dismiss. (Docket Entry No. 13 at p. 15–17). TGS replied, asserting the first-sale rule as a defense. (Docket Entry No. 16 at p. 19). Assuming that Geophysical's response is appropriately construed as a motion for leave to amend, *see Law v. Ocwen Loan Servicing, LLC*, 587 F. App'x 790, 796 (5th Cir. 2014) (per curiam), the court denies that motion. Amendment would be futile because extraterritoriality principles and the act-of-state doctrine separately preclude finding that the Petroleum Board illegally made and distributed copies of Geophysical's seismic lines. TGS's importation of the lawfully made copies is protected under the first-sale doctrine. *See Kirtsaeng*, 133 S. Ct. at 1355–56. The infringement claim based on TGS's importation of the copies the Petroleum Board made is dismissed with prejudice.

## VI.    Conclusion

Geophysical's motion for reconsideration is granted. (Docket Entry No. 32). The court's March 30, 2015 Memorandum and Opinion is vacated. (Docket Entry No. 28). This Memorandum and Opinion is issued in its place. The amended Memorandum and Opinion grants TGS's motion to dismiss. (Docket Entry No. 10). Geophysical's claims are dismissed with prejudice, and final judgment is separately entered.

SIGNED on November 9, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge