Case 4:14-cv-01368 Document 51 Filed in TXSD on 01/04/16 Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
January 04, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEOPHYSICAL SERVICES, INCORPORATED, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 14-1368 |
| TGS-NOPEC GEOPHYSICAL SERVICES, | § § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER ON TGS'S MOTION FOR ATTORNEY'S FEES AND COSTS**

The remaining issue in this copyright-infringement action is whether TGS is entitled to an award of the attorney's fees and costs it incurred and, if so, how much. TGS seeks $170,706.00 in attorney's fees and $236.95 in costs. (Docket Entry No. 45). Geophysical has responded, and TGS has replied. (Docket Entry Nos. 46, 47, 50). Based on the motion, response, and reply; the record; and the applicable law, the court grants in part and denies in part TGS's motion, awarding $132,888.00 for the fees it reasonably expended in defending this action, and $236.95 in taxable costs.

The reasons are explained below.

**I.      Attorney's Fees under the Copyright Act**

    **A.      Whether TGS Is Entitled to a Fee Award**

Section 505 of the Copyright Act provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.[1]

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 521 (1994), the Supreme Court rejected the "dual" standard under which "prevailing plaintiffs are generally awarded attorney's fees as a matter of course, while prevailing defendants must show that the original suit was frivolous or brought in bad faith." *Id.* at 520–21. "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, . . . defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527. The Court made clear that it was not adopting the "British Rule" of awarding "attorney's fees as a matter of course." *Id.* at 533. Instead, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Id.* at 534.

"[A]n award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely." *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008) (per curiam) (quotation marks omitted). That said, "recovery of attorney's fees is not automatic." *Id.* (the district court did not abuse its discretion in denying motion for award of attorney's fees under § 505). In determining whether a fee award is appropriate, a court may consider the following nonexclusive factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Fogerty*, 510 U.S. at 534 n.19).

---

[1] Under § 505, attorney's fees are a type of cost, but they are analyzed separately from other costs. *See Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998).

There is no dispute that TGS is the prevailing party. The question is whether the *Fogerty* factors weigh in favor of a fee award.

### 1. Frivolousness or Objective Unreasonableness

The first factor in deciding whether to award a prevailing party its fees is the frivolousness or objective unreasonableness of the opposing party's claims or defenses. "'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x. 77, 80 (2d Cir. 2001) (per curiam). There is a difference between a suit that is "without merit" and one that is "patently frivolous." *See Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 382 n.23 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Although "[t]he Supreme Court has explicitly approved of a district court considering frivolity . . . as [one] of the multiple factors in a non-exclusive list [that] may guide the court's discretion over attorney's fees in copyright cases," *id.* at 382, *Fogerty* rejected the "dual" standard of awarding prevailing defendants fees only if "the original suit was frivolous or brought in bad faith," 510 U.S. at 520–21. "*Fogerty* did not reject the dual rule in order to add a clone." *Edwards v. Red Farm Studio Co.*, 109 F.3d 80, 82 (1st Cir. 1997).

*Creations Unlimited, Inc. v. McCain*, 889 F. Supp. 952 (S.D. Miss. 1995), is instructive. The district court granted the defendant's motion for summary judgment, ruling that the works were not substantially similar, but refused to award the defendant its attorney's fees. The court concluded that the infringement claim, "though ultimately not successful, was neither frivolous nor objectively unreasonable, either in its factual allegations or its legal undergirding." *Id.* at 954. The appellate court affirmed. 112 F.3d 814 (5th Cir. 1997) (per curiam). In contrast, when the plaintiffs' claims are objectively unreasonable because the legal issues are clear and no case law from any circuit

3

supports the plaintiffs' position, case law supports awarding the defendant its fees. *Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002).

Although Geophysical's direct-infringement claim was not patently frivolous, the record shows that claim lacked factual support. This court found that "Geophysical's allegations that TGS copied and distributed its seismic lines without including the copyright-management information [were] conclusory and speculative." So were its allegations that "TGS infringed by using the seismic lines the [Petroleum] Board sent to find locations for its own surveying work." (Docket Entry No. 28 at p. 22–23). The court granted Geophysical leave to amend its complaint. Geophysical instead moved for reconsideration, acknowledging that it was "not able to file an amended complaint that would satisfy the Court's requirements" under Federal Rule of Civil Procedure 8(a). (Docket Entry No. 32 at p. 5).

The contributory-infringement claim presents a closer question. Geophysical correctly argues that the court granted its motion for reconsideration on this claim. On reconsideration, the court vacated the court's earlier implied-license analysis because TGS had not raised that affirmative defense. (Docket Entry No. 43 at p. 1). But "although the analysis and grounds are different, the outcome is not." (*Id.* at 2). The court found at least three independent reasons supporting dismissal of this claim. The reasons changed on reconsideration, but it was the strength of TGS's defenses—not the strength of Geophysical's contributory-infringement claim—that the court reevaluated. The claim was not patently frivolous, but it sought an aggressive expansion of copyright in an international context. *See Assessment Techs., LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) ("[T]he suit was marginal . . . [and] [t]he plaintiff was rather transparently seeking to annex a portion of the intellectual public domain."). The objective-unreasonableness

4

factor weighs in favor of awarding the prevailing party its reasonable fees. *See Fogerty*, 510 U.S. at 534.

### 2. The Parties' Motivation in Filing Suit

The record does not show that Geophysical had a bad-faith basis for filing this copyright-infringement suit. TGS concedes that the record does not show bad faith. (Docket Entry No. 45 at p. 6). This factor does not weigh in favor of awarding attorney's fees.

### 3. Compensation and Deterrence

The third factor in deciding whether to award fees is the need for compensation and deterrence. "[U]nlike civil rights suits, where while a prevailing plaintiff is presumptively entitled to an award of fees, a prevailing defendant is entitled to such an award only if the suit was groundless, in copyright suits 'prevailing plaintiffs and prevailing defendants are to be treated alike.'" *Assessment Techs.*, 361 F.3d at 436 (citations omitted) (quoting *Fogerty*, 510 U.S. at 534). "If the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees. But if at the other extreme the claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding him attorneys' fees is compelling." *Id.* at 436–37 (citation omitted).

Compensation supports granting a fee award. In *Fogerty*, the Supreme Court directed courts to harmonize fee awards under § 505 with the statutory and constitutional aims of copyright law. 510 U.S. at 525. The Court discussed how the successful defense of a copyright-infringement action serves copyright law's underlying purposes:

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.

*Id.* at 527. TGS's vigorous and multi-pronged defense has both promoted public access to seismic lines and made a "contribution to the state of the law in the field of copyright." *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (the district court did not abuse its discretion in awarding fees to the prevailing defendant, even assuming that the plaintiff's claim was objectively reasonable; "[a]t one point, a copyright defendant had to show that the plaintiff's claim was frivolous or made in bad faith in order to be entitled to fees; but no longer.").

TGS has litigated Geophysical's claims for over one and one-half years. Without the prospect of a fee award, prevailing defendants like TGS "might be forced into a nuisance settlement or deterred altogether from exercising [their] rights." *Assessment Techs.*, 361 F.3d at 437. Without a fee award, a defendant could have little incentive "to obtain nonexclusive access to the intellectual public domain." *Id.* at 436. This would upset the important balance in copyright law between "competing claims" that are both necessary:

> Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The immediate effect of our copyright law is to secure a fair return for an author's creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good.

*Fogerty*, 510 U.S. at 526–27 (quotation marks omitted).

Deterrence also supports awarding TGS its fees because of the objectively unreasonably nature of some or all of Geophysical's claims. "The cases show that when a copyright-infringement claim is objectively unreasonable, deterrence is an important factor." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 796–97 (S.D. Tex. 2009) (collecting cases). The record shows that Geophysical has recently filed at least three additional copyright suits in Texas federal courts based on similar factual allegations and legal theories, further supporting a fee award under this factor. (Docket Entry No. 45 at p. 7). *See Randolph*, 634 F. Supp. 2d at 796.

The factor of providing compensation and deterrence supports a fee award.

### 4.     Balancing the Factors

The balance of the *Fogerty* factors supports a fee award.

## B.     The Lodestar Calculation

### 1.     The Hourly Rate

The first step in computing the lodestar is determining a reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The party seeking fees bears the burden of establishing the market rate and should present the court with evidence from which the court can determine the reasonableness of the proposed rate. *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).

Norton Rose Fulbright represented TGS. One partner, Melanie Rother, and one senior associate, Peter Tipps, staffed the case. Rother submitted an affidavit stating that she focuses on complex commercial litigation, including copyright cases; that she is familiar with the usual and customary fees charged in this type of litigation; and that the "rates are reasonable for attorneys with [her and Tipps's] level[s] of skill and experience." (Docket Entry No. 45, Ex. 1). Rother stated that the application was based on an hourly rate of $580 for partners and $455 for associates. (*Id.*). The court takes judicial notice of the Texas State Bar's "Hourly Rates in 2013 Report." This report states that the median hourly rate for attorneys litigating intellectual-property disputes in Houston was $321 per hour.[2] The median hourly rate for Houston attorneys working at firms with between

---

[2] State Bar of Texas, Dep't of Research & Analysis, 2013 HOURLY FACT SHEET, *available at* https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=27264 (last visited Dec. 28, 2015).

201 and 400 lawyers was $363 per hour.[3] The median hourly rate for Houston attorneys with between 11 to 15 years of experience, like Rother, was $259 per hour. The median hourly rate for Houston attorneys with 3 to 6 years of experience, like Tipps, was $232 per hour.

Geophysical challenges the reasonableness of TGS's rates, arguing that the lawyers who worked on the case did not specialize in intellectual-property litigation. (Docket Entry No. 46 at p. 14). Geophysical cites no authority to support its argument that attorneys who successfully defend their clients must specialize to receive a fee consistent with market rates for litigating cases in the subject area. To the contrary, the case law appears to reject this argument. *Cf. Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 158 (5th Cir. 2015) (per curiam) (the magistrate judge did not clearly err in setting the hourly rate by failing to account for the attorney's "lack of experience" in litigating under the Fair Debt Collection Practices Act), *petition for cert. filed on other grounds*, 2015 WL 6164761 (U.S. Oct. 14, 2015) (No. 15-511).

At the same time, however, the prevailing market rates for similarly situated attorneys litigating intellectual-property disputes in relatively large firms are substantially lower than the rates TGS seeks. *See Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000) ("Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." (quotation marks omitted)). The median rates are closer to what Geophysical suggests is reasonable, $300 per hour for the partner and $220 per hour for the associate who worked on this case.

---

[3] Norton Rose Fulbright employs 249 lawyers in its Houston office. NALP Directory of Legal Employers, "Norton Rose Fulbright: All Offices," *available at* http://www.nalpdirectory.com/employer_profile?FormID=4935&searchCondJSON=%7B%22SearchEmployerName%22%3A%22norton%20rose%20fulbright%22%7D (last visited Dec. 28, 2015).

The median rate for all lawyers at firms within a certain size range is not, however, the end of the reasonable-hourly-rate analysis. Courts also consider the complexity of the legal issues, the novelty of the claims, and the complexity and nature of the facts. The expertise and skill of the lawyers is another factor. "Four of the *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation—are presumably fully reflected in the lodestar amount." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993);[4] *see also Abrams v. Baylor College of Med.*, 805 F.2d 528, 536 (5th Cir. 1986) ("The *Johnson* factors govern the determination of reasonableness itself; they are not merely factors to be considered in adjusting the award once the lodestar is calculated."); *In re Enron Corp.*, 586 F. Supp. 2d 732, 755–56 (S.D. Tex. 2008). A district court may "subsume[] in the lodestar amount" *Johnson* factors provided it does not "double count a . . . factor already considered in calculating the lodestar when it determines the necessary adjustments." *Shipes*, 987 F.2d at 320.

Geophysical presented a novel and aggressive legal theory based on unusual facts. Rother and Tipps defended their client vigorously, skillfully, and effectively. Based on all the circumstances and criteria, the court finds that Rother's reasonable rate is $500 per hour and Tipps's rate is $400 per hour. This properly takes into account their expertise and experience, the complexity of the case, and the success they achieved. *See id.* (district court did not err when it reduced the hourly rate to better reflect prevailing market rates but declined to reduce the rate to the

---

[4] The *Johnson* factors include: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases. *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974).

extent requested by the nonprevailing party after accounting for four of the *Johnson* factors in the lodestar.).

### 2. The Number of Hours Reasonably Expended

A fee application should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are excessive, redundant, or otherwise unnecessary" are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quotation marks omitted). The court may also exclude hours from the lodestar calculation that were not properly documented. *See id.* at 433.

The record includes an invoice for legal services that Norton Rose Fulbright seeks to recover, with a supporting affidavit. (Docket Entry No. 45, Ex. 1). The first entry is for May 21, 2014, five days after Geophysical filed its complaint. The last entry is for September 23, 2015. The entries provide a detailed summary of the amount of time each lawyer spent on various tasks throughout that period. The total is 80 partner hours and 273.2 associate hours.

Geophysical objects that the hours spent are excessive, duplicative, or unnecessary. It has submitted an annotated copy of TGS's fee application, objecting to all but 24.6 of the hours that counsel for TGS spent on this case over the 16-month period. (Docket Entry No. 46, Ex. 1). Geophysical has not explained why the hours billed are excessive, duplicative, or unnecessary, either generally or by challenging specific entries. *See generally Hensley*, 461 U.S. at 433–34. A court is not required to audit the billing records on its own, but the court is required to determine whether the hours are reasonable. *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). "[T]rial courts need not, and

indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Based on careful review, the court concludes that the number of hours billed by the associate for research and analysis is unreasonably high, given that the case was dismissed under Rule 12(b)(6). The court reduces the associate's hours by 15 percent to ensure that the number of hours billed is reasonable for the needs of the case.

The partner's rate is $500 per hour, for 80 hours. The associate's rate is $400 per hour, for 232.22 hours. The lodestar is $132,888.00.

### 3. Adjustments to the Lodestar

After calculating the lodestar, the district court has discretion to adjust the fee award in light of the 12 *Johnson* factors. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997); *see supra* note 4 (listing the factors). Although Geophysical does not explicitly argue that the *Johnson* factors weigh in favor of reducing the award, it emphasizes that the fee award TGS seeks is "stratospheric compared to other awards in [the Fifth Circuit]." (Docket Entry No. 46 at p. 13 n.7). It cites four district court cases and one Fifth Circuit case from the 1980s in support.[5] The case law shows that the fee award is consistent with other, more recent awards to prevailing defendants under § 505 of the Copyright Act. *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588–89 (5th Cir. 2015) (affirming a $183,000 fee award to prevailing defendant after bench trial); *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 411–12 (5th Cir. 2004) (affirming a $2,765,026.90 fee award to prevailing defendant after seven-day trial); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 147–48,

---

[5] Geophysical also relies on this court's decision in *Randolph*, where the lodestar was reduced by 85 percent. 634 F. Supp. 2d at 801. The reduction was based primarily on "the disproportionate financial positions of the parties." *Id.* Geophysical has not argued or explained how a disparity in the parties' financial positions would justify further reduction to the lodestar. *Randolph* provides no support.

159 (5th Cir. 2004) (per curiam) (affirming two fee awards to prevailing defendants in one action dismissed on summary judgment and another dismissed under Rule 12(b)(6), totaling at least approximately $448,000).

Having considered the *Johnson* factors, the court concludes that adjustment to the lodestar is not appropriate. The court awards TGS $132,888.00 in attorney's fees.[6]

## II.     The Motion for Costs

### A.     The Applicable Law

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013). Even if a federal statute does not specifically authorize recovery of costs in a particular case, "Rule 54(d)(1) independently authorizes district courts to award costs to prevailing parties" unless a statute or rule precludes it. *Id.* at 1174 n.5. The Rule "does not *require* courts to award costs to prevailing [parties]." *Id.* at 1178 n.9. Rather, it gives the court discretion based on the circumstances each case presents.

A federal statute "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Under 28 U.S.C. § 1920, a district court may tax as costs:

(1)     Fees of the clerk and marshal;

---

[6] Geophysical cites to the final judgment, which dismissed this case with prejudice and stated that "[e]ach party is to bear its own costs," as evidence that this court has already decided not to award TGS attorney's fees and other costs under § 505 of the Copyright Act. (Docket Entry No. 44). The final judgment was entered before TGS moved for an award of attorney's fees and costs. Federal Rule of Civil Procedure 54(d) and Local Rule 54.2 provide that a party may move for an award of attorney's fees or costs after the entry of final judgment. Geophysical's argument is unpersuasive.

12

    (2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
    (3)    Fees and disbursements for printing and witnesses;
    (4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
    (5)    Docket fees under section 1923 of this title; [and]
    (6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Absent objection, the court presumes that statutorily authorized costs were necessarily incurred and will be taxed. *See Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.*, 952 F. Supp. 415, 417 (N.D. Tex. 1997) ("[I]n the absence of a specific objection, deposition costs will be taxed as having been necessarily obtained for use in the case."). An objection shifts that burden to the party seeking costs to show that otherwise authorized costs were necessary. *Jerry v. Fluor Corp.*, No. 10-1505, 2012 WL 4664423, at *2 (S.D. Tex. Oct. 2, 2012) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991)). The "costs taxable under § 505 are limited to those enumerated in § 1920." *Tempest Publ'g, Inc. v. Hacienda Records & Recording Studio, Inc.*, — F.3d —, 2015 WL 6394414, at *8 (S.D. Tex. Oct. 21, 2015).

    **B.**    **The Award of Costs**

TGS has submitted a bill of $236.95 in costs, $20.70 under 28 U.S.C. § 1920(2) and $216.25 under 28 U.S.C. § 1920(4). Rother's declaration states that the amounts are correct and that the costs were necessarily obtained for use in the litigation. (Docket Entry No. 45, Ex. 2). *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 574 (5th Cir. 2005) (similar submission sufficient to support cost award). Geophysical objects that the costs were not necessary because the parties did no discovery and the case was dismissed on a Rule 12(b)(6) motion. The argument suggests that because the case did not reach discovery, costs cannot be recovered as a matter of law. (Docket Entry No. 47 at p. 2) ("[N]o discovery was ever obtained and there can be

13

no basis for taxing costs for transcripts."); (*id.*) ("No copies were necessarily obtained for use in the case because there was no discovery whatsoever, and no discovery documents were ever copied. Therefore, there can be no basis for taxing costs for copies."). Geophysical cites no case supporting this argument. Dismissal of a case on a Rule 12(b)(6) motion and a lack of discovery do not preclude a cost award. The motion for costs is granted.

### III.    Conclusion

The court grants in part and denies in part TGS's motion for attorney's fees and costs, awarding $132,888.00 in attorney's fees and $236.95 in taxable costs. (Docket Entry No. 45).

SIGNED on January 4, 2016, at Houston, Texas.

                              Lee H. Rosenthal
                           United States District Judge